**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**MATTHEW ELI HATCH,**

**Plaintiff,**

**vs.** **Civ. No. 25-1041 MLG/JFR**

**FRANK BISIGNANO, Commissioner of Social Security,**

**Defendant.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 11)[2] filed December 17, 2025, in connection with Plaintiff's *Opposed Motion to Reverse or Remand,* filed January 14, 2026. Doc. 13. Defendant filed a Response on April 7, 2026. Doc. 20. Plaintiff filed a Reply on April 21, 2026. Doc. 21. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is well-taken and recommends that it be **GRANTED.**

## I. Background and Procedural Record

Plaintiff Matthew Hatch (Mr. Hatch) alleges he became disabled on October 1, 2018, at the age of twenty-four years and one month, because of congenital hydrocephalus, Dandy-

---

[1] On July 10, 2026, this matter was reassigned to the undersigned as the referral judge. Doc. 25. On August 13, 2026, United States District Judge Matthew L. Garcia entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 27.

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 11), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

Walker Syndrome, Attention-Deficit/Hyperactivity Disorder, Combined; and dysthymia with anxious distress. Tr. 92, 120. Mr. Hatch attended school through the ninth grade, later completed his GED, and has since taken course work at various community colleges. Tr. 365, 564. Mr. Hatch has worked as a plant nursery back lot hand, a brewery dishwasher, a grocery store stocker, and a seasonal hand tree planter and trail worker. Tr. 365. Mr. Hatch stopped working on April 15, 2020, due to his medical conditions. Tr. 364.

On August 28, 2020, Mr. Hatch protectively filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., and for Social Security Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Tr. 323-28, 329-30. On January 8, 2021, Mr. Hatch's applications were denied. Tr. 90-115, 116, 117, 118-142, 191-94, 195-98. On October 6, 2021, they were denied again at reconsideration. Tr. 143, 145, 147-68, 169-190, 202-204, 205-07. Upon Mr. Hatch's timely request, Administrative Law Judge (ALJ) Susan Smoot held a hearing on January 24, 2023. Tr. 55-89. Mr. Hatch appeared in person with attorney Lindsay Griffel.[3] *Id*. On April 21, 2023, ALJ Smoot issued an unfavorable decision. Tr. 35-48. On September 25, 2023, the Appeals Council denied Mr. Hatch's request for review. Tr. 1-7.

On November 21, 2023, Mr. Hatch timely filed a Complaint seeking judicial review of the Commissioner's final decision. Tr. 759-61 (*see* USDC NM Civ. No. 23-1031 JMR (Doc. 1)). On June 26, 2024, Magistrate Judge Jennifer M. Rozzoni entered an Order granting the Commissioner's Unopposed Motion to Remand. Tr. 762. On October 16, 2024, the Appeals Council entered an Order Remanding Case to Administrative Law Judge and instructing that ALJ Smoot's hearing decision did not "contain an adequate evaluation of the opinion evidence

---

[3] Mr. Lucero is represented in these proceedings by Attorney Benjamin Decker. Doc. 1.

and prior administrative medical findings when assessing the claimant's residual functional capacity." Tr. 769.

On April 15, 2025, ALJ Talia Timmins held a second administrative hearing. Tr. 697-731. On August 19, 2025, ALJ Timmins issued an unfavorable decision. Tr. 666-86. Mr. Hatch did not request a review by the Appeals Council but timely filed a Complaint on October 20, 2025, seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. <u>Applicable Law</u>

### A. <u>Disability Determination Process</u>

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b).

> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B. <u>Standard of Review</u>**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal

standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" Langley, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

## III. Analysis

The ALJ determined that Mr. Hatch met the insured status requirements of the Social Security Act through March 31, 2024, and that he had not engaged in substantial gainful activity since his alleged onset date. Tr. 673. She found that Mr. Hatch has severe impairments of "a mental impairment variously assessed as attention deficit hyperactivity disorder (ADHD), dysthymia/persistent depressive disorder with anxious distress, anxiety disorder, schizotypal personality disorder and autism spectrum disorder; Dandy Walker syndrome[.]" *Id.* The ALJ also found that Mr. Hatch has a nonsevere impairment of congenital hydrocephalus. *Id.* The ALJ found that Mr. Hatch "does not have any severe physical impairments, though the Dandy

Walker syndrome has been considered with respect to mental impairments." Tr. 673-74. The ALJ determined that Mr. Hatch's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 674-76. Accordingly, the ALJ proceeded to step four and found that Mr. Hatch had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> He can understand, remember, and maintain attention and concentration to carry out simple instructions and duties in two hour increments with normal breaks in the workday; can perform work that does not require a specific production rate, such as assembly line work, or work that requires hourly quotas; can have occasional interaction with the general public, occasional interaction with coworkers with no teamwork related tasks, and occasional interaction with supervisors; can use judgment to make simple work-related decisions; and he can deal with occasional changes in a routine work setting.

Tr. 676. The ALJ determined that Mr. Hatch has no past relevant work. Tr. 685. The ALJ determined that considering Mr. Hatch's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that Mr. Hatch can perform.[5] Tr. 685. The ALJ determined, therefore, that Mr. Hatch is not disabled. Tr. 686.

In support of his Motion, Mr. Hatch argues that the ALJ committed the following harmful and reversible errors: (1) the ALJ failed to adequately evaluate consultative examiner David LaCourt, Ph.D.'s opinion that Mr. Hatch suffers a moderate to marked limitation in working without supervision; (2) that objective tests administered by John King, Ph.D., John H. Koewler, Ph.D., and Steven K. Baum, Ph.D., support Plaintiff's symptom testimony and the opinions of

---

[5] The VE expert identified representative occupations of inspector/hand packager (DOT code 559.687-074 with 25,000 jobs nationally); electronics assembler (DOT code 729.687-010 with 40,000 jobs nationally); order puller (DOT code 922.687-058 with 283,000 jobs nationally); and cleaner (DOT 381.687-018 with 300,000 jobs nationally). Tr. 685.

consultative examiner Dr. LaCourt; (3) the ALJ failed to include any limitation for working without supervision in the RFC without explanation despite finding Dr. LaCourt's opinions partially persuasive; and (4) the ALJ failed to consider the last behavioral health assessment of record conducted by Charlene Dobbins, LPCC LADAC, when weighing the other physical opinions and Plaintiff's symptom testimony. Doc. 13 at 24-29.

For the reasons discussed below, the Court finds that the ALJ, having found persuasive Dr. LaCourt's opinion that Mr. Hatch is moderately limited in his ability to work without supervision, nonetheless failed to account for this limitation in the RFC. This case, therefore, requires remand.

**A. <u>David LaCourt, Ph.D.</u>**

Pursuant to a referral through the Disability Determination Services Unit, Mr. Hatch presented to David LaCourt, Ph.D., on January 5, 2021, for psychological evaluation. Tr. 563-66. Dr. LaCourt took background information, performed a mental status exam, and administered the Wechsler Adult Intelligence Scale-IV. *Id.*

Dr. LaCourt observed on mental status exam, *inter alia,* that Mr. Hatch was appropriately dressed, had normal hygiene, functional posture and gait, normal attention with a mildly variable level of concentration, oriented times three, grossly intact recall and memory, normal eye contact, responsive facial expression, cooperative and appropriately engaged, appropriate affect, dysphoric and mildly anxious mood, and understandable speech with normal tone. Tr. 564.

Dr. LaCourt noted that score results from the WAIS-IV were "within the average range, although with working memory and processing speed in the lower portion of that range." *Id.*

Dr. LaCourt's diagnostic impressions were (1) average intellectual functioning; (2) persistent depressive disorder (dysthymia), moderate severity; and (3) other specified anxiety disorder (with variable/low frequency and mild severity). Tr. 565.

Dr. LaCourt's assessed Mr. Hatch's abilities to do work-related mental activities as follows: *No limitation* in his ability to (1) understand and remember very short and simple instructions, (2) have short interactions with the public, and (3) use public transportation and/or travel to unfamiliar places; *no to mild limitation* in his ability to (1) understand and remember detailed and/or complex instructions; and (2) attend and concentrate; *mild limitation* in his ability to adapt to change in the workplace; *moderate limitation* in his ability to (1) persist with tasks and (2) socially interact with coworkers; and *moderate-to-marked limitation* in his ability to (1) work without supervision and (2) socially interact with supervisor. Tr. 566.

The ALJ discussed and evaluated Dr. LaCourt's opinion as follows:

> In January 2021, Dr. David LaCourt conducted a consultative psychological evaluation (Exhibit 4F). He opined the claimant had no limitation to mild to moderate mental limitations except for moderate to marked limitation working without supervision and interaction with supervisor (Exhibit 4F, page 4).
>
> I note that "mild," "moderate," and "moderate to marked" ratings regarding the degree of difficulty performing various work activities are not expressed in vocationally relevant terms and fail to set forth the claimant's maximum capabilities (i.e., never, occasionally, or frequently) for understanding and remembering, sustained concentration and task persistence, social interaction, and adaptation in the work setting. I find this opinion partially persuasive. The opinion of no limitation to a "moderate" limitation is supported by the mental status examination findings of attention within normal range with only a mildly variable level of concentration, intact memory, normal eye contact, responsive facial expression, cooperative behavior, claimant noted to be appropriately engaged with appropriate affect, though dysphoric, pessimistic and mildly anxious mood (Exhibit 4F). The assessment of no limitation to moderate limitation is supported by claimant's report of taking no medications on a regular basis and assessment of average intellectual functioning with a Full Scale IQ of 98.
>
> Although "moderate to marked" limitation is somewhat supported by reference to "impersistence/frequent breaks" this is not supported by the contemporaneous

> clinical findings of only a mildly variable level of concentration and attention within the normal range (Exhibit 4F, page 2). While the opinion regarding social interaction with supervisors was supported by reference to the claimant's "short terms of jobs and reported job performance issues," this is not supported by the claimant's presentation at the consultative examination with generally normal mental status, normal cooperation, appropriate affect, and normal thought processes (Exhibit 4F, page 2). Marked limitations are also inconsistent with other generally normal psychiatric and mental status examinations and the claimant's activities. For example, in August 2021, the claimant had normal orientation, normal thought processes, normal speech and language, appropriate appearance, intact memory, average intellect, cooperative attitude, and alert attention (Exhibit 5F, pages 4 and 5).[6] Primary care records document the claimant is alert and attentive on examination with documented efficacy of medication prescribed for his ADHD and anxiety (Exhibit 17F, pages 14, 15).[7] This degree of limitation is not consistent with records reflecting the claimant has earned primarily "A" and "B" grades in his college courses, with accommodation only for extended test time in a separate location, with correspondence from San Juan College indicating the claimant's request for attendance modifications, advance notice of due dates, flexibility of due dates, make up missed tests, and consideration of full-time status (even if not) to receive financial aid was not approved as no information was " . . . presented that suggests this is a question of access, or that you need accommodations in order to have full access to the same learning situation that is presented to others" (34E).[8]

Tr. 682-83.

**B. <u>The ALJ's Evaluation of Dr. LaCourt's Opinion and RFC</u>**

Plaintiff argues that the ALJ's analysis of Dr. LaCourt's opinion regarding his assessed limitation of Mr. Hatch's ability to work without supervision is inadequate for three reasons. Doc. 13 at 24-26. First, Plaintiff argues the ALJ's rationale is confusing such that the Court cannot meaningfully follow her reasoning regarding whether the ALJ is disregarding Dr. LaCourt's opinion on "special supervision" or is she saying that she is persuaded that

---

[6] Exhibit 5F, pages 4 and 5, reflect neuropsychologist Dr. John King's April 2021 mental status exam. Tr. 571-72.

[7] Exhibit 17F, pages 14 and 15, reflect a December 23, 2024, encounter note prepared by Mark Himes, DO, of San Juan Medical Group, P.C., in which Dr. Himes noted that Plaintiff reported the ADHD medication was working, that Plaintiff was feeling much more functional, emotionally stable, doing much better in school, and able to complete his work. Tr. 1103.

[8] Exhibit 34E is an email communication from the Accessibility Services Coordinator at San Juan College approving in part and denying in part Mr. Hatch's requests for certain accommodations. Tr. 971-72.

Plaintiff's limitation regarding "special supervision" is moderate but not marked. *Id.* Plaintiff argues this confusion merits remand. *Id.* Second, Plaintiff argues the ALJ failed to evaluate the consistency of Dr. LaCourt's opinion on special supervision and/or ignored critical objective evidence tending to show Dr. LaCourt's opinions are consistent with the other medical opinions and non-medical evidence of record. *Id.* Plaintiff argues that Dr. LaCourt's opinion on special supervision is consistent with reports from Drs. John King[9] and John Koewler[10] that Plaintiff has impaired motor processing speed, impaired learning and problem solving, and impaired concentration/attention. *Id.* Mr. Hatch also argues that the ALJ should have discussed but ignored probative evidence found in LPCC, LADAC Dobbins' January 12, 2024, initial behavioral health assessment.[11] *Id.* Third, Plaintiff argues that the ALJ's error is highly

[9] Pursuant to a referral by neurologist Tanuj Saaraswat, M.D., Mr. Hatch presented to Dr. John King at Neuropsychological Services of New Mexico, LLC, on July 17, 2020, for neuropsychological evaluation in the context of an impaired cognition diagnosis. Tr. 603-613. Dr. King interviewed Mr. Hatch; took psychiatric, developmental, medical, academic, employment, social, and legal histories; and reviewed certain of Mr. Hatch's clinical record. Tr. 603-06. Dr. King also administered a number of tests, including, *inter alia*, the Test of Premorbid Functioning (TOPF), Wechsler Adult Intelligence Scale-IV, California Verbal Learning Test-3, Brief Visuospatial Memory Test, and Trail Making Test. Tr. 607. Dr. King recommended that (1) Mr. Hatch be considered disabled from maintaining competitive employment due to pervasive emotional/behavioral problems as well as impaired visual memory and attention, most likely related to a history of congenital hydrocephalus; (2) Mr. Hatch would likely benefit from psychotherapy; and (3) Mr. Hatch would benefit from psychotropic medication consultation for treatment of ADHD and dysthymia. Tr. 613.

[10] On June 19, 2023, Mr. Hatch presented to John H. Koewler, Ph.D., for evaluation needed for Social Security Disability appeal. Tr. 988-92. Dr. Koewler interviewed Mr. Hatch, reviewed records from Dr. Steven Baum, conducted a mental status exam, and administered the Trail Making Test and Kaufman Brief Intelligence Test. *Id.* Dr. Koewler concluded, *inter alia*, that Mr. Hatch has complex, severe psychological problems; average intelligence; impaired attention and concentration; and cognitive processing is slow. Id. Dr. Koewler's diagnoses included major depression, social anxiety disorder, post-traumatic stress disorder, ADHD, schizotypal personality disorder, autism spectrum disorder, chronic fatigue, alcohol use disorder, and cannabis use disorder. *Id.* Dr. Koewler recommended psychiatric treatment and medication. *Id.*

[11] On January 12, 2024, Mr. Hatch self-referred to Presbyterian Medical Services for CCSS services. Tr. 1123-1132. LPCC, LADAC Dobbins conducted an initial behavioral health assessment that included intake from Mr. Hatch regarding his personal life, trauma, substance abuse, legal history, and mental health diagnoses and current status. Tr. 1129-31. LPCC, LADAC Dobbins notes that Mr. Hatch meets the diagnostic criteria for schizotypal personality disorder and she deferred on a separate anxiety disorder diagnosis. *Id.* LPCC, LADAC Dobbins noted differential diagnoses of autism and ADHD, and noted family histories of OCD, autism, and schizophrenia. *Id.* LPCC, LADAC Dobbins recommended individual therapy to address issues related to mood instability, substance abuse, trauma, grief and loss. *Id.*

prejudicial because among the list of abilities required to perform "*any job*" is the ability to sustain an ordinary routine "*without special supervision*." *Id.* (emphasis is original). Plaintiff, therefore, argues that any meaningful limitation in sustaining an ordinary routine without special supervision could have resulted in finding that Plaintiff is disabled. *Id.* Plaintiff separately argues that the ALJ failed to include any limitations in the RFC regarding working without supervision without explanation despite finding Dr. LaCourt's opinion partially persuasive. Doc. 13 at 29.

The Commissioner contends that the ALJ adequately explained her findings with respect to Dr. LaCourt's assessed limitations with respect to both supportability and consistency, cited medical evidence in the record that undermines Dr. LaCourt's assessed limitation with respect to moderate to marked limitations, and evaluated other opinion evidence in the record which Plaintiff has not challenged. Doc. 20 at 5-8. The Commissioner contends that the ALJ's discussion meets the Tenth Circuit's articulation requirements because the Court can follow the ALJ's reasoning and determine that the correct legal standards have been applied. *Id.* The Commissioner contends the ALJ explained that Dr. LaCourt's assessed limitation of Mr. Hatch's ability to work without supervision was not supported by contemporaneous clinical findings or other medical and non-medical evidence. *Id.* The Commissioner further contends that the regulations do not require an ALJ to explain whether any one source's opinion is consistent with another but instead provide that an ALJ compares the consistency of opinion evidence with the underlying medical and non-medical evidence. *Id.* The Commissioner contends that here the ALJ considered the statements and opinions of Drs. King, Koewler, and Baum,[12] and to the

[12] Mr. Hatch saw psychologist Steven K. Baum, Ph.D., beginning on November 26, 2021. Tr. 616. Mr. Hatch saw Dr. Baum three more times in 2021, and twelve times in 2022 between January 5, 2022, and April 28, 2022. Tr. 617-19, Tr. 620-31. On February 8, 2023, Dr. Baum prepared a *Medical Source Statement: Mental Limitations* on Mr. Hatch's behalf. Tr. 654-58.

extent they did not opine on issues reserved to the Commissioner, found them not persuasive based on medical and non-medical evidence. *Id.* The Commissioner notes that Mr. Hatch has not challenged the ALJ's evaluation of these opinions. *Id.*

The Commissioner further contends that substantial evidence supports the ALJ's finding that Mr. Hatch had the RFC to do a range of unskilled work with production rate and social limitations. *Id.* at 4-5.

An ALJ is required to articulate how persuasive she finds all of the medical opinions and all of the prior administrative medical findings in the case record. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). When a medical source "provides multiple medical opinion(s) or prior administrative medical finding(s)," the ALJ need only articulate how she "considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." 20 C.F.R. §§ 416.920c(b)(1), 416.1520(b)(1). In other words, an ALJ is not required "to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* However, this does not,

> in the Court's view, alter the Tenth Circuit's requirement that an ALJ must explain h[er] rejection of any medical source opinions in the record concerning the claimant's RFC. This requirement flows from the premise that an ALJ's decision must discuss the uncontroverted evidence the ALJ chooses not to rely upon, as well as significantly probative evidence he rejects, in order to provide the Court with a sufficient basis to determine that appropriate legal principles have been followed. The requirement enables the courts to engage in meaningful judicial review of agency decisions.

*Lobato v, Kijakazi*, 2022 WL 500395, at *10–11 (citations, quotation marks, and brackets omitted).

In evaluating the persuasiveness of medical opinions, an ALJ is to consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors that support or contradict a medical opinion or finding. 20 C.F.R. §§

404.1520c(c)(1)-(5), 416.920c(c)(1)–(5). An ALJ is always required to articulate how he considered supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinion or prior administrative medical findings in your determination or decision."). However, an "ALJ is only required to explain how he ... considered the other three factors if differing medical opinions are equally well-supported and consistent with the record." *Arteaga v. Kijakazi*, Civ. No. 21-530 JMR, 2023 WL 3613342, at *4 (D.N.M. May 24, 2023) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)).

The Tenth Circuit has explained that the supportability factor examines how closely connected a medical opinion is to the evidence and medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (brackets and ellipses omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). In other words, supportability examines "how well a medical source supported his own opinions with 'objective medical evidence' and 'supporting explanations.' " *Zambrano v. Kijakazi*, Civ. No. 20-1356 KRS, 2022 WL 1746765, at *6 (D.N.M. May 31, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)).

Consistency, on the other hand, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.' " *Nathan H. v. O'Malley*, Civ. No. 23-00756 JMR, 2024 WL 3633790, at *5 (D.N.M. Aug. 2, 2024) (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). In other words, consistency "calls for a comparison

between the subject medical opinion and 'the evidence from medical sources and nonmedical sources' in the record." *Zambrano*, 2022 WL 1746765, at *5 (citation omitted).

In evaluating medical opinions, "[a]n ALJ must, at the very least, provide an explanation that allows the reviewing court to follow h[er] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions." *Id.* Although the regulations do not specify how thoroughly an ALJ must analyze supportability and consistency, an ALJ's explanation must "eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Frazer v. Kijakazi*, Civ. No. 20-1147 GBW, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (brackets and ellipses omitted) (quoting *Pamela P. v. Saul*, Civ. No. 19-575 DJS, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020)).

At issue here is Dr. LaCourt's assessed "moderate-to-marked" limitations related to Mr. Hatch's ability to work without supervision. Mr. Hatch argues the ALJ's explanation as to his ability to work without special supervision is not clear, *i.e.,* whether the ALJ disregarded the ALJ's opinion or whether the ALJ is persuaded this limitation is moderate but not marked. The Court, however, is able to follow the ALJ's discussion and reasoning with respect to her evaluation of Dr. LaCourt's opinion and assessed limitations. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (where courts "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal"). For instance, the ALJ begins by explaining that Dr. LaCourt's opinion was partially persuasive. The ALJ then explained that "the opinion of no limitation to a 'moderate' limitation is supported" by both Dr. LaCourt's clinical findings and the

medical record evidence. Tr. 682. The ALJ further explained that Dr. LaCourt's assessed limitations greater than moderate, *i.e.,* "moderate-to-marked," were inconsistent with Dr. LaCourt's clinical findings and not supported by the record. Thus, applying the ALJ's explanations to the "moderate to marked" assessed limitation at issue, the Court concludes that the ALJ found persuasive Dr. LaCourt's assessed limitation regarding Mr. Hatch's ability to work without supervision *to the extent it is moderate*, but was not persuaded by Dr. LaCourt's assessment that Mr. Hatch had greater than moderate limitations, *i.e.,* moderate-to-marked or marked, in this ability.

The ALJ explained she discounted Dr. LaCourt's assessed moderate-to-marked limitations because they were not supported by "contemporaneous clinical findings of only mildly variable level of concentration and attention with the normal range" and "claimant's presentation at the consultative examination with generally normal mental status, normal cooperation, appropriate affect, and normal thought processes[.]" Tr. 682. The ALJ further explained that to the extent Dr. LaCourt's assessed Mr. Hatch's ability to work without supervision and socially interact with supervisors was marked, Dr. LaCourt's assessment was inconsistent with other medical and non-medical evidence in the record. *Id.*

The Court finds that addressing the sufficiency of the ALJ's explanations is unnecessary because it is undisputed that as to Dr. LaCourt's assessed moderate-to-marked limitations, *i.e.,* working without supervision and socially interacting with supervisors, the ALJ found them persuasive to the extent they were moderate. The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007). The finding of a moderate impairment " 'supports the conclusion that the individual's capacity to perform the activity is impaired,' POMS DI 24510.063 B.2.

(boldface omitted), and therefore must be related with sufficient precision in a dispositive hypothetical to a VE and in an RFC finding." *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014); *see also Bowers v. Astrue*, 271 F. App'x 731, 733-34 (10th Cir. 2008). The question, therefore, is whether the ALJ, having found Dr. LaCourt's opinion persuasive that Mr. Hatch is moderately limited in his ability to do certain work-related mental activities, adequately accounted for them in her RFC and, if not, whether she explained why not.

Here, the ALJ limited Mr. Hatch to unskilled work with no specific production rate. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (explaining that unskilled work generally requires understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work, *i.e.,* simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting) (citing SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996))). The ALJ's RFC further limited Mr. Hatch to "occasional interaction with the general public, occasional interaction with coworkers with no teamwork related tasks, and occasional interaction with supervisors." Tr. 676. The ALJ's RFC, therefore, specifically accounts for Mr. Hatch's moderate limitation in social interactions. The ALJ's RFC is silent, however, with respect to Mr. Hatch's moderate limitation in working without supervision. Without an explanation from the ALJ about why this limitation is not accounted for in the RFC, remand is required.

Here, the ALJ does not provide an explanation why Mr. Hatch's moderate limitation in his ability to work without supervision is not accounted for in the RFC. In *Jaramillo*, the Tenth Circuit examined the requirements of unskilled work and held that none of the basic mental abilities of unskilled work captured a moderate limitation on the ability to work without supervision. *Jaramillo*, 576 F. App'x at 876 (finding an RFC limitation to "simple, routine,

repetitive, and unskilled tasks" does not adequately account for moderate limitations in carrying out instructions, attending and concentrating, and working without supervision); *see also Vigil*, 805 F.2d at 1204 (explaining there may be cases in which an ALJ's limitation to "unskilled" work does not adequately address a claimant's mental limitations); *Chapo v. Astrue,* 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (finding that a limitation to unskilled work accounted for "issues of skills transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level").

Moreover, the ability to work without supervision is considered "critical" for unskilled work. *See* Program Operations Manual System ("POMS") § DI 25020.010(B)(3)(f) (describing the ability to sustain an ordinary routine without special supervision as critical to unskilled work). Indeed, the VE testified at the April 15, 2025, Administrative Hearing that if Mr. Hatch required extra supervision to persist at unskilled work tasks on an occasional basis it possibly would affect the jobs the VE identified and could "preclude all competitive work in the absence of an accommodation." Tr. 729. Thus, had the ALJ properly accounted for the moderate limitation in Mr. Hatch's ability to work without supervision, the VE acknowledged this could preclude competitive work.

In sum, the RFC in this case fails to address the moderate limitation in Mr. Hatch's ability to work without supervision and this case, therefore, requires remand.

**C. <u>Remaining Claims</u>**

Mr. Hatch advances additional arguments in support of his Motion to Reverse or Remand. However, because the Court concludes that remand is required as set forth above, it will not address the remaining claim of error. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir.

2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

## IV. Recommendation

For all of the reasons stated above, the Court finds that Mr. Hatch's Motion is well taken. The Court, therefore, recommends that the Motion be **GRANTED.**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**